Good morning, Your Honor. Patricia Brody and Carrie Shapiro from Jeffrey Mangus Butler-Marmorow on behalf of Appellee Simmicks. The first thing I'd like to address, Your Honor, is the fact that Appellant has put before the Court the current status of mediation and settlement talks in the underlying case, but has done it in a way which we believe mischaracterizes the record in this case, and I want to make sure that the record is clear. The Appellant has included, Appellant says that what is happening in the lower court is that the parties in the lower court are abandoning all of their obligations with regard to CEQA environment, abandoning all of their obligations with regard to environmental concerns. She said that the county is giving away the store, that there's going to be a finding that CEQA is preempted under Federal law, and that everything bad will happen with regard to what is being discussed in the lower court. Now, there is a status conference minute order which was submitted by the Appellant, and basically what that order says is that the parties have been involved in nine months of court-ordered mediation before two retired Federal judges. The parties at the table are the county. Kennedy, who are they? Lane Phillips, Your Honor, and if I may just consult with Mr. Shapiro. Somebody else has come in to assist Lane Phillips as well. John Wagner. They're two retired Federal judges. Yes. I don't think they're from Southern California, Your Honor, but they are retired Federal judges. And they were appointed by Judge Tavrizian to try and bring the parties together in this matter. And the parties who are before the court and the parties at the table are all the parties that need to be there. It's the county, it's CEMEX, and it's the United States government. I'm sorry, who? The United States government. And not the city? I'm sorry? Not the city. No, not the city. It's not the city because this is not a lawsuit which is challenging the adequacy of the record under CEQA. This is not a lawsuit. We are the plaintiffs, CEMEX, and we brought a lawsuit, 120 pages of which describes the history of this matter and how we got to where we are. And what we allege is that the county abused its process. But you also have a lot to say about the city as well. Pardon me? You also have quite a lot to say about the city as well in the 124 pages. Well, but it's not really we don't have any allegations against the city. The allegations are against the county and the extent to which they reacted to, were influenced by, or were otherwise in coordination with the city. But we haven't sued the city. We've sued the county. The county is the only one who can defend its actions, not the city. And the allegations are that the conduct of the county is such that it has abused the process and it has stalled. And this is something that Judge Tavrizian understands. He's lived with this case for years. This particular matter has been up to the Ninth Circuit twice. There's litigation pending on a number of different cases. Let's get back to legal issues in the case. I'm sorry, Your Honor, I can't hear you. Let's get back to the legal issues in the case. The legal issues at present, as I understand them, are does the city have a protectable legal interest and are its interests being represented? Why doesn't it have a protectable legal interest because CEQA says it does? Your Honor, all CEQA says is that it has a right to participation. That right to participation. And essentially what the point of this lawsuit is is to override the results of its participation, right? I'm sorry, I can't hear you. To override the results of its participation and essentially in one version to preclude its participation because of preemption. Is that not correct? I'm sorry, once again, Your Honor. All right. I understand the point of this lawsuit, the central thrust of this lawsuit, to be A, to declare a void the results of its participation by, among other things, making various accusations about why the city was taking the position that it was, And secondly, to make a legal ruling about its future participation, should anything else go forward in the future, by preempting CEQA in whole or in part. Is that not right? Well, Your Honor, that is not what is before the court. That's not the... But that's what's in the complaint. So the question is, why wasn't the city allowed to participate in that, in a case in which its legal interest was being implicated? Your Honor, we disagree that the city has a significantly protectable interest in this lawsuit for the purposes of giving it status to intervene in this lawsuit. Did I misdescribe the lawsuit? I'm sorry, Your Honor? Did I misdescribe the lawsuit? It's coming from here, not there. I know.  I can't hear you. Did I misdescribe the lawsuit? I still can't find it. Did you misdescribe the lawsuit? Did you misdescribe the lawsuit? Your Honor, yes. I mean, basically, the lawsuit says that there are different prayers for relief which were sought, one of which is that the county has just stopped processing. It's got to kick the thing out. It's got to issue the permit in the form in which it was last, or the more onerous relief which was sought, which is not part of the negotiations. And I do want to get back to where this case is now, because the appellant has brought that before the Court, and it's completely different than the way the appellant has described it. But there was also a claim in the case that if, in fact, the conduct of the county has been so egregious that it has lost the ability to be involved in this, then, yes, it goes back to the NEPA findings, which are also very extensive, and those are the conditions which will control. And in either case, the city is going to be cut out of a process which, under State law, has a right to cut it. And this is not a merit question. I mean, in other words, you may be perfectly right as to the merits of the case, but the issue is whether the city's interests are being implicated and whether it should, especially in light of settlement negotiations, have a place at the table. Well, Your Honor, let me just – I don't want to get away from the settlement because it's been mischaracterized, and I want to make sure that the Court understands. And because of confidentiality provisions, I'm very limited in what I can tell you about that. But what I can tell you is that the city is being cut out of negotiations. It doesn't seem to me to be permanent, what's going on in the negotiations, other than that the city wasn't there. Well, yes, it does, Your Honor, because the concern of the city is that they're being wiped out of the whole CEQA process and CEQA is being erased. Well, that's not happening at all, because in the negotiations, which are – and you can see it in the record from the order of the Court – what's about to happen is that the final EIR will be certified with regard to this project. So the parade of horribles in terms of CEQA being completely obliterated are not going to take place. But the point is that there was a lawsuit. There were settlement negotiations in the lawsuit, and the city, which claims to have a protectable interest and which you haven't explained to me why it doesn't have one, was not part of those negotiations because it wasn't a part of the lawsuit. Had it been allowed to intervene originally, it would have been at the table. You may be at the same place, but it would be a much more useful place because you would have a truth settlement of all the affected people. Your Honor, I'll tell you why. I don't think it has a significantly protectable interest, because under California law, what it really has is it has an amorphous interest in – which has been held by the courts of this circuit not to be sufficient to give you intervener status. Northwest Forrest v. Glickman case. Intervention was denied, and the reasoning was that the mere concern of the proposed intervener to prevent defiance of our environmental laws. And that was a case in which you had a party that had a statutory protected right to consultation? Well, Your Honor, no, it wasn't. But, you know, I don't think that – and I don't think there's any case law which says that the right of consultation gives you the significantly protectable interest under the standards of the Ninth Circuit. Can I take it that it doesn't? This mine is right on the border of the city. Well, Your Honor, it's a mile and a half from the city. Well, I – you know, a mile and a half doesn't go as far. Well, Your Honor, there are – actually, there are other mines in between ours and the city, and there's some record – there's evidence in the record about which the city has expressed no concerns whatsoever. So there's also a lot of evidence in the record that the city's interest, the environmental interest, really are a smokescreen for a lot of other interests. That's in the record, but I don't have time to address that. But in answer to your question, it is within a mile and a half of it, which is not all that close. But getting back to your point, Your Honor, I think that under this – Let me – just as a practical matter. Yes. What's wrong with having the city participate in all this? Your Honor, what's wrong with having the city participate is that every time the city participates, the process turns into an unlimited process which never concludes. And just as an example of that, there was an appeal before the IDLA at which the city was one of the appellants. And in that case, they barraged the board with so many briefs and so many repeated filings that the court – that the board finally said, stop, time out. Well, certainly the district court could deal with the city as litigant. Well, Your Honor, the court – the district court was in the position to determine whether the interests of the city were such that it warranted involvement and, two, whether as a practical matter, which is one of the criteria under intervention, it was something that needed to be done to have the city's interest in there. Your Honor, I – this is a very – Let me ask you this. All right.  Your Honor, there was no request for it to act as amicus. There is nothing to preclude it from seeking that status now with regard to a consent decree if we reach that point. Well, would your client have any objection to the city acting in the role of amicus or being recognized as amicus? Your Honor, with amicus – I've had a lot of experience in this area. Yes, yes. And one of the – and I know what Judge Trebizion is going through. And one of the approaches that I took was if I had these parties that wanted to be heard, well, sure, you don't want a lot of people cluttering all this up because then you're going to – things are going to move very, very slowly and a lot of frustration. But if you allow these folks to come in as amicus, then they could be heard. Your Honor – And that relieves a lot of their frustration, and it doesn't really slow the process down. Your Honor, with regard – At least they're heard. I'm sorry. Your Honor, with regard to the amicus status, and I really couldn't say I don't know that we would object to it other than it's just another – it's another round, another layer of briefing. This is what we go through. I know, Your Honor. You know, I mean, it would be nice if you could just go out there and get the property and start digging and not worry about anybody. Well, Your Honor, but that – given the fact that we've been working for 13 years and we've got – we've been going through levels of review and we have thousands of pages of environmental studies and we've got reports and charts and graphs. Your Honor, that's the way things work these days. I know, but it's not really that we're just going out there and digging. The problem is after 13 years, we haven't been able to get into anything. No, I'm talking about something else. But with regard to the suggestion of amicus, amicus is certainly less – 13 years is not that long. I'm sorry. Go ahead. 13 years is not that long? With regard to – amicus is different than the intervener status because we would – we could never agree that they have intervener status, that their interest is significantly protectable enough for intervener. It's a different standard for amicus than if they were to ask for amicus consideration. I can't tell you what my client would say, but my suspicion is it would probably not as adverse to that as it would be diametrically opposed to recognizing any intervener status for it. The other thing, Your Honor, is that this is a very dense process. And what we did, what I did actually, is I went through and I made a chart of all the different ways in which the City of Santa Clarita has for the last 13 years been able to make its views known with regard to this project, both administratively, in court proceedings. But this is the ultimate case right now. What's going on right now at the bargaining table is apparently about to conclude. Well, Your Honor, whatever comes out of the bargaining table, I guarantee you the City of Santa Clarita is going to figure out a way to do something about it. I mean, they've already said that they're going to challenge the NEPA ruling with regard to the federal approval process. I would say one thing that really bothers me here is it seems that any mediation practitioner would tell you that to cut out a main or perhaps the main interest holder here out of negotiations, leaving aside the lawsuit, is extraordinarily unwise. And you accomplish that by cutting them out of the lawsuit. Well, Your Honor, one, we don't think that they are the immediately significant party with regard to this. This is an allegation that the county has abused its process. It's the county who is at risk. Your whole complaint is that the city has been – and what you're telling us is the city has been the main instigating factor in getting a county to do what it's doing. It's done. But it's nonetheless the county who's the operative body. It's the county who has jurisdiction with regard to the CEQA matter. It's not the city. It's the county who has to act or not act. And it's the county's actions which we are challenging. Any more questions, Your Honor? No, thanks. Okay. Thank you. It defies credibility to say that this lawsuit is not about the city when there's 37 paragraphs in this complaint that attacks the city's conduct. Judge Pragerson, with respect to your questions about amicus, amicus status will not help us in this case. We need to be a party because this case is coming very close to conclusion. Counsel for Symex has said the county is going to certify the EIR momentarily. Who is going to challenge the consent decree? Who is going to appeal that? Amicus cannot do that. We would not be able to have our CEQA statutorily protected right protected by only an amicus status. This is not a situation as in the case of League of Latin American Cities v. Wilson, where the court said that intervention should be denied because the applicant can count on the party that's already in the case. We cannot count on the county at all in this case. And in the Fireman's Fund v. ---- How long has this case been pending now? Well, the appeal or the entire case? The entire case. It was the original complaint was filed in 2002, I believe, in January. And then our motion to intervene that's for appeal was filed in March of 2002. So we've had a long time. And there's these smoke-filled rooms where this mediation is going on behind closed doors. And according to what was in the record in July of this year ---- Before to the district court in this case? Yes. We asked right away on the original complaint. That was denied. That was in 2002. That's correct. And then we didn't appeal that. Before that. Well, it was the matter was filed in January or February. So we filed our motion to intervene within ---- There was no lawsuit up until 2002. That's right. That's right. And then you filed a second ---- you filed a second motion after the second complaint. Is that what happened? Yes, because between the first and the second complaint, the county denied the project. The first complaint was only about CIMEX asking the county to reach a decision. We were ---- the city was still involved in the administrative process. But then everything changed. When the county denied the decision, then the only forum where whether or not that decision was going to be revoked was the Federal court. So that changed, and that's why we filed. I just want to remind the court that in the Fireman's Fund v. City of Lodi case, the court said that after an indication to the contrary, Congress does not intend to deny local communities significant power of self-protection, and there's a long tradition of local government to preserve and protect the public health of its citizens. That's what we are needing to do here and asking the court to allow us intervention either as of right or permissively because there are the same questions of law and fact. And then we will be in that district court and able to protect people, which the county is no longer doing. Thank you. All right. That's it. I understand. Submit it. Next matter is State of California v. Neville Chemical Company. Judge Berzon, let me know when you want to take a part. Why don't we do after this? I'll be okay. Maybe after this case we can take a break. Right after. What did you say? After this next case, maybe we can take a break. After this case? You just let me know.
judges: Pregerson, Fernandez, Berzon